UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

DEC 18 2012

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:12-MJ-797 |
| | ) | |
| YANIRA DEL CARMEN | ) | (Under Seal) |
| GUERRERO ANDRADE, | ) | |
| a.k.a. "Yadira," | ) | |
| a.k.a. "Litsy," | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Brendan M. Shelley, being duly sworn, depose and state as follows:

### I. INTRODUCTION

1. I am a Special Agent employed by the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE). I am assigned to ICE Homeland Security Investigations - Washington, D.C., which is located in Fairfax, Virginia. I have been employed as a Special Agent with ICE since October 2007. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the ICE Special Agent Training Program. Prior to becoming a Special Agent, I was an ICE Management and Program Analyst with ICE's Office of the Principal Legal Advisor. My duties as a Special Agent for ICE include investigating administrative and criminal violations of the Immigration and Nationality Act, United States customs laws, and other federal criminal violations.

2. This affidavit is submitted in support of a criminal complaint and arrest warrant, charging defendant Yanira Del Carmen Guerrero Andrade with Sex Trafficking of a Child.

1

Specifically, between in and around January 2009 and in and around August 2010, in Fairfax County and elsewhere, in the Eastern District of Virginia and elsewhere, defendant Yanira Del Carmen Guerrero Andrade, also known as "Yadira," and also known as "Litsy," aided and abetted by others, did knowingly recruit, entice, harbor, transport, provide, and obtain a girl, "EA," who had not attained the age of eighteen years, in and affecting interstate commerce, knowing and in reckless disregard of the fact that EA had not yet attained the age of eighteen years, and the defendant knowingly caused EA to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a) and 2.

3. This affidavit is based on my personal observations during the course of this investigation, information conveyed to me by other law enforcement officials, my review of records, documents and other physical evidence obtained during this investigation and interviews of witnesses. This affidavit contains information necessary to support a finding of probable cause, but does not include each and every fact observed by me or known by the government.

## II. THE DEFENDANT

4. Defendant Yanira Del Carmen Guerrero Andrade (hereinafter "Guerrero Andrade") is an alien from El Salvador who is illegally present in the United States.

5. On November 28, 2012, I conducted a criminal history check of Guerrero Andrade. This revealed an arrest on February 5, 2009 in Chesterfield, Virginia for prostitution in violation of Virginia Code 18.2-346. Records indicate that Guerrero Andrade was found guilty of this offense and sentenced to 30 days in jail with 30 days of the sentence suspended.

## III. PROBABLE CAUSE

### A. Information Obtained from Confidential Informant #1

6. On or about July 2, 2010, I interviewed an ICE HSI confidential informant (CI #1) who has provided reliable information. CI #1 informed me that an individual named "Julio" operates a prostitution service. I know from this investigation that "Julio" is Julio Cesar Revolorio Ramos (hereinafter "Revolorio Ramos").

7. Among other things, CI #1 told me that:

   a. he met Julio sometime in 2010;

   b. Julio's prostitution service was one of several prostitution services that belonged to a larger organization;

   c. Julio recruited females to work as prostitutes;

   d. Julio transported prostitutes from Maryland to northern Virginia;

   e. Julio directed prostitutes to have sex with male clients in exchange for money;

   f. Julio instructed prostitutes to charge $30 for 15 minutes of vaginal sex; and

   g. CI #1 saw Julio drive female prostitutes from Prince George's County, Maryland to various locations in Virginia.

8. In October 2010, CI #1 provided me with two telephone numbers used by Revolorio Ramos. CI #1 stated that the first number, (202) 702-xxx8, was Revolorio Ramos's personal telephone number. CI #1 stated that the second number, (240) 898-xxx9 was the number Revolorio Ramos used in connection with the prostitution enterprise.

3

9. I subsequently interviewed CI #1 on or about June 14, 2012. During this interview, I showed CI #1 a photograph of Ramos. CI #1 told me that this is the individual he knew as "Julio." CI #1 also told me that:

    a. Revolorio Ramos prostituted a juvenile female whose initials I know are "EA"; and

    b. Revolorio Ramos transported EA from Maryland to Virginia in order for EA to have sex with customers in exchange for money.

**B.** **Interview of Juan Fernando Munoz Vasquez**

10. On or about September 15, 2010, I interviewed Juan Fernando Munoz Vasquez (hereinafter "Munoz Vasquez") at the Riverdale Police Department in Riverdale, Maryland. At the time of the interview, Munoz Vasquez was in federal custody after having been arrested for transporting an individual for purposes of prostitution, in violation of Title 18, United States Code, Section 2421. Munoz Vasquez subsequently pleaded guilty to transporting a minor for purposes of prostitution, in violation of Title 18, United States Code, Section 2423. During the interview, among other things, Munoz Vasquez stated that:

    a. he worked for an interstate prostitution delivery service;

    b. he previously prostituted a juvenile female (known to law enforcement agents as a woman whose initials are "EA");

    c. an individual named "Julio" operates an interstate prostitution delivery service;

    d. Julio rents a room to EA;

    e. Julio prostituted EA; and

    f. Julio transported EA from Maryland to Virginia in order for EA to have sex with male clients in exchange for money.

## C. Interview of Juvenile Victim EA

11. On September 8, 2010, I interviewed EA. During the interview, EA stated that:

   a. she was born in August of 1993;

   b. she lived in Maryland and frequently traveled to Virginia for purposes of engaging in prostitution;

   c. she had sex with men in exchange for money;

   d. she was instructed to charge $30 for 15 minutes of vaginal sex, and then give the $30 to the person who drove her to the prostitution appointments;

   e. she previously worked for Munoz Vasquez, but primarily worked for an individual known as Julio; and

   f. she lived with "Julio" and Julio's wife in Prince George's County, Maryland.

12. EA also allowed me to search her cellular telephone, and I observed a contact named "Julio" in her phone. EA stated that the individual named "Julio" who is listed in her phone is the same person "Julio" who had prostituted her.

13. On or about September 9, 2010, I observed EA at a residence in Hyattsville, Maryland, which she identified as the residence where she lived with Julio and Julio's wife.

14. On or about August 13, 2012, I again interviewed EA. During the interview, EA stated that:

   a. Julio's full name is "Julio Revolorio Ramos;"

   b. she previously worked for Julio as a prostitute for approximately five to six weeks;

   c. Revolorio Ramos transported her from Prince George's County, Maryland to various locations in Virginia in order for EA to work as a prostitute; and

    d.    Revolorio Ramos instructed EA to charge $30 for 15 minutes of vaginal sex.

15.    On or about August 21, 2012, I again interviewed EA. During the interview, EA informed me that:

    a.    she ran away from home sometime in late 2008;

    b.    she was living with an MS-13 gang member;

    c.    she met an MS-13 associate named "Yadira" at a nightclub in Hyattsville, Maryland;

    d.    Yadira informed EA that she (Yadira) worked as a prostitute;

    e.    Yadira suggested EA could make a lot of money by working as a prostitute;

    f.    at some point, EA was pregnant and needed to find a new place to live;

    g.    EA called Yadira to ask if Yadira had a room;

    h.    Yadira referred EA to a friend who had a room for EA;

    i.    at some point, EA was told she needed to pay rent in order to stay in the room;

    j.    Yadira recruited EA to work as a prostitute for Yadira's boyfriend, Julio Revolorio Ramos;

    k.    Yadira told EA that EA had to work as a prostitute because EA was pregnant and had no other way to make money;

    l.    Yadira and Revolorio Ramos knew EA was under the age of 18;

    m.    EA worked as a prostitute for a portion of one week in January 2009;

    n.    EA informed Revolorio Ramos that she was pregnant, but Revolorio Ramos stated that he did not care;

o. on a Monday, Revolorio Ramos and Yadira transported EA from Langley Park, Maryland through Washington D.C. to various locations in northern Virginia in order for EA to have sex with male clients in exchange for money;

p. Yadira and Revolorio Ramos instructed EA to charge customers $30 for 15 minutes of vaginal sex;

q. Yadira and Revolorio Ramos instructed EA that, if asked, she should tell customers that she was 20 years old;

r. Yadira and Revolorio Ramos instructed EA to provide customers with an alias and not use her real name;

s. EA complained to Yadira and Revolorio Ramos about being sore in light of having sex with several customers;

t. she had sex with approximately 15 customers on her first day of work in exchange for money;

u. Revolorio Ramos and Yadira drove her home from Virginia to Maryland at the end of the day;

v. the next day, Revolorio Ramos and Yadira returned to EA's residence in Langley Park to pick her up so EA could again work as a prostitute;

w. Revolorio Ramos and Yadira transported EA from Langley Park, Maryland through Washington D.C. to various locations in northern Virginia in order for EA to have sex with customers in exchange for money;

x. sometimes while EA was having sex with customers in one room, Yadira waited outside for her in another room;

y. Yadira also had sex with male clients in exchange for money;

z. Yadira elected not to accompany EA on her third day of working as a prostitute;

aa. Revolorio Ramos drove EA home from Virginia to Maryland at the end of the day;

bb. the next day, Revolorio Ramos returned EA to her residence in Langley Park and drove her through Washington D.C. to Virginia in order for EA to work as a prostitute;

cc. EA had sex with approximately 23 customers that day; after having sex with the 16th customer, EA was crying and asked Yadira and Revolorio Ramos if she could stop because she was sore; Yadira and Revolorio Ramos pressed EA to continue having sex with customers;

dd. EA told Revolorio Ramos she wanted to stop working as a prostitute;

ee. Revolorio Ramos became angry when she wanted to stop working as a prostitute because he did not have any other prostitutes who could work the remainder of the week;

ff. EA again reached out to Yadira sometime in 2010 asking for a place to live;

gg. Yadira offered EA a room at Yadira and Revolorio Ramos's home located in Adelphi, Maryland;

hh. Yadira also offered to babysit EA's child while EA worked as a prostitute for Revolorio Ramos;

ii. EA worked as a prostitute for Revolorio Ramos for a number of one-week increments during the summer and fall of 2010;

jj. Revolorio Ramos transported EA from Adelphi, Maryland through Washington D.C. to various locations in northern Virginia in order for EA to work as a prostitute in Virginia;

kk. Revolorio Ramos instructed EA to charge $30 for 15 minutes of vaginal sex;

ll. Yadira introduced EA to men who worked for or operated other prostitution businesses so that EA would work as a prostitute for these businesses; and

mm. EA provided Revolorio Ramos and Yadira with money EA earned while working as a prostitute.

**D. Interviews of Julio Revolorio Ramos**

16. On September 5, 2012, I arrested Julio Revolorio Ramos pursuant to a warrant issued by the United States District Court for the Eastern District of Virginia. The arrest warrant was issued for violations of Title 18, United States Code, Section 2423—Interstate Transportation of a Minor for Illegal Sexual Activity. After the arrest, I interviewed Revolorio Ramos at an ICE office in Fairfax, Virginia. Before asking Revolorio Ramos any questions, I advised him of his *Miranda* rights. Revolorio Ramos stated that he understood his *Miranda* rights and that he wished to answer questions without the presence of an attorney. Among other things, Revolorio Ramos told me that:

   a. he worked for an interstate prostitution delivery service based in Maryland;

   b. he transported female prostitutes from Maryland to Virginia in order for the prostitutes to have sex with customers in exchange for money;

   c. he previously lived on Riggs Road in Adelphi, Maryland;

   d. he prostituted EA in January 2009 and during the summer of 2010;

   e. Yadira Guerrero is his girlfriend and she introduced EA to Revolorio Ramos in 2009;

   f. Guerrero knew that Revolorio Ramos was prostituting EA;

   g. Revolorio Ramos instructed EA to charge customers $30 for 15 minutes of sexual intercourse;

   h. he drove EA from Maryland, through Washington D.C. to various locations in northern Virginia in order for EA to have sex with customers in exchange for money;

   i. EA returned to Revolorio Ramos during the summer of 2010 in order to resume work as a prostitute;

    j.    In 2010, Revolorio Ramos again transported EA from Maryland through Washington D.C. to various locations in northern Virginia in order for EA to have sex with customers in exchange for money;

    k.    several customers repeatedly asked for EA because EA looked young;

    l.    he prostituted EA for several weeks during the summer of 2010; and

    m.    Yadira's telephone number is 703-56x-xxx5.

17. On or about September 19, 2012, I interviewed Revolorio Ramos at the U.S. Attorney's Office for the Eastern District of Virginia, in Alexandria, Virginia. At the time of the interview, Revolorio Ramos was in federal custody after having been arrested for Transporting a Minor for Purposes of Prostitution, in violation of 18 U.S.C. § 2423. During the interview, Revolorio Ramos related that:

    a.    his wife's full name is "Yanira Guerrero Andrade;"[1]

    b.    Guerrero Andrade was from El Salvador;

    c.    in January 2009, he and Guerrero Andrade transported EA from Maryland, through Washington D.C. to northern Virginia in order for EA to work as a prostitute;

    d.    in January 2009, EA worked as a prostitute for approximately three days;

    e.    EA quit working as a prostitute mid-week;

    f.    in 2010, EA began living with Revolorio Ramos and Guerrero Andrade at their Riggs Road address in Adelphi, Maryland;

    g.    during the summer of 2010, EA worked for Revolorio Ramos;

---

[1] Revolorio Ramos previously told me that defendant Yanira Guerrero Andrade is his girlfriend. I believe that Revolorio Ramos is not lawfully married to Guerrero Andrade, but that they have had a long-term relationship.

  h.  in summer 2010, Guerrero Andrade knew EA was working for Revolorio Ramos as a prostitute; and

  i.  Revolorio Ramos received a portion of the money EA earned from having sex with customers.

18. On or about November 7, 2012, Revolorio Ramos pleaded guilty to Sex Trafficking of a Child, in violation of 18 U.S.C. § 1591(a). *United States v. Julio Revolorio Ramos*, No. 1:12-CR-474-CMH (E.D. Va. Nov. 7, 2012).

### IV. CONCLUSION

19. Based on the above-described facts, I respectfully submit that there is probable cause to believe that between in and around January 2009 and in and around August 2010, in Fairfax County and elsewhere, in the Eastern District of Virginia and elsewhere, defendant Yanira Del Carmen Guerrero Andrade, also known as "Yadira," and also known as "Litsy," aided and abetted by others, did knowingly recruit, entice, harbor, transport, provide, and obtain a girl, "EA," who had not attained the age of eighteen years, in and affecting interstate commerce, knowing and in reckless disregard of the fact that EA had not yet attained the age of eighteen years, and the defendant knowingly caused EA to engage in a commercial sex act, in violation of Title 18, United States Code, Sections 1591(a) and 2.

_____
Brendan M. Shelley, Special Agent
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

Sworn to and subscribed before me this 18th day of December, 2012, at Alexandria, Virginia.

/s/Thomas Rawles Jones, Jr.
_____
The Honorable T. Rawles Jones, Jr.
United States Magistrate Judge

11