IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA, | : | |
|---|---|---|
| | : | |
| v. | : | Case No. 1:13cr69 (JCC) |
| | : | |
| YANIRA del CARMEN GUERRERO-ANDRADE, | : | |
| | : | |
| Defendant. | : | |

**POSITION OF THE DEFENDANT
WITH RESPECT TO SENTENCING FACTORS AND
BRIEF ADDRESSING 18 U.S.C. §3553(a) FACTORS**

COMES NOW the defendant, YANIRA del CARMEN GUERRERO-ANDRADE (hereinafter, Ms. Andrade), by and through counsel, and files this, her position with respect to the sentencing factors to be used in this matter and her brief addressing the 18 U.S.C. §3553(a) factors , and for it she states:

I.  INTRODUCTION

This Court, although not bound by any mandatory application of the requirements and procedures established by the United States Sentencing Commission in the United States Sentencing Guidelines (hereinafter the guidelines), will be guided by the advisory application of those requirements and procedures.

The United States Probation Office, through Quentin T. Lowe, has filed its presentence investigation report in this matter, and the addendum thereto (hereinafter, jointly, the report), and has provided a copy of each to counsel for Ms. Andrade. Counsel and Ms. Andrade have reviewed said report with the assistance of an interpreter, and agree, except as addressed herein, in all material regards with the facts and the

application of the guidelines as contained therein.  It is anticipated that the government, through its counsel, Marc Birnbaum, Esquire and Michael Frank, Esquire, Assistant United States Attorneys, will file its position concerning sentencing and will have no objections to the matters as found in the report.

Counsel for Ms. Andrade, counsel for the government and Mr. Lowe, have consulted as necessary concerning these matters and this position document reflects those consultations.

## II.  FACTUAL DISPUTES

Ms. Andrade does not dispute the material facts contained in the report.

## III.  SENTENCING FACTOR DISPUTES

Ms. Andrade does not dispute the technical application of the sentencing factors as discussed in the report, except with respect to the effect that the technical application of the guidelines has and the sentencing guideline range arising therefrom.  However, those matters are addressed in the portion of this sentencing memorandum addressing the 18 U.S.C. §3553 (a) factors.

## IV.  GUIDELINES AND PSIR RECOMMENDATION

The guideline range recommended in the report, as amended in the corrections and/or additions thereto, is 151 to 188 months of imprisonment, with a statutory mandatory minimum sentence of 120 months.

## V. §3553(a) CONSIDERATIONS

In light of the decision in *United States v. Hughes*, 401F.3d 540 (4th Cir. 2005), this Court must "first calculate . . . the range prescribed by the guidelines.  Then, the court shall consider that range as well as other relevant factors set forth in the guidelines

and those factors set forth in [18 U.S.C.] §3553(a) before imposing the sentence. . . . [Then, if] the court imposes a sentence outside the guideline range, it should explain its reasons for doing so . . . . *Id.*, at 546. The application of the other 18 U.S.C. §3553(a) factors is considered herein.

Under 18 U.S.C. §3553(a), the sentencing court must consider seven (7) factors before imposing a sentence after conviction. The final sentence should be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing set forth in the statute. 18 U.S.C. §3553(a). The following analysis is provided to assist this Court in determining the appropriate sentence for Ms. Andrade, particularly in light of the 120 month mandatory minimum sentence this Court must impose. Based on the analysis, Ms. Andrade proposes that a variant sentence of 120 months imprisonment, which is below the proposed guideline range but satisfies the mandatory minimum sentence, would be sufficient, but not greater than necessary, to comply with those sentencing purposes and, in this case, that this Court should impose such a variant sentence.

### *(1) "the nature and circumstances of the offense and the history and characteristics of the defendant"*

#### (a) **The nature and circumstances of the offense**

The report adequately describes the nature and circumstances of the offense herein, from a purely technical point of view. However, the offense conduct as described in the report overstates the severity of Ms. Andrade's criminal behavior, which was actually limited to a minor role in facilitating the ongoing scheme. In fact, Ms. Andrade had little to do with most of that scheme.

Explaining the nature and circumstances of the offense in its simplest terms, in

January 2009, Ms. Andrade was a prostitute who helped arrange an introduction between her pimp (Ramos) and a young woman (EA) who needed money, and who talked with EA about the prostitution business. EA was under 18 and she was, or became, a prostitute within the MS-13 dominated subset of the local prostitution market. EA worked for Ramos for approximately 3 days in January 2009 and 2 weeks in June and July 2010. Ms. Andrade was romantically involved with Ramos and accompanied him when he transported EA to prostitution encounters during January 2009. During the summer of 2010, EA and her baby lived with Ramos and Ms. Andrade and, when EA went with Ramos to prostitution encounters, leaving her child alone at the house, Ms. Andrade took care of the child. In addition, Ms. Andrade provided EA with contact information for other pimps, since the prostitution market in which they were involved permitted prostitutes to move from pimp to pimp on even a weekly basis. Thus, Ms. Andrade helped EA exercise her option to continue working for Ramos, or moving on to some other pimp (or leaving the prostitution trade completely).

These are the behaviors that are reflected in the report as qualifying Ms. Andrade for the application of the Repeat Sex Offender status found in §4B1.5 of the guidelines, and the imposition of an offense level total of 34. That offense level results in the proposed guideline range of 151 to 188 months, while the offense level total calculated without the application of the §4B1.5 increase would be an offense level 29, resulting in a proposed guideline range of 87 to 108 months.

Ms. Andrade did not force EA to do anything, she did not coerce EA to become a prostitute, she did not directly profit from EA's prostitution activities and she was not actively involved in EA's prostitution activities. She provided comfort and assistance,

4

however misguidedly, to EA when EA needed help.

As a result of the imposition of the §4B1.5 increase in the guideline total offense level, the report's proposed guideline range would result in a significant over-punishment of Ms. Andrade, whereas a sentence at the statutory mandatory minimum of 120 months (which is still higher than the guideline range without the application of the §4B1.5 increase) would accurately reflect the actual nature and circumstances of the offense in this matter, and Ms.. Andrade's participation therein. Such a sentence would adequately punish, but not over-punish, Ms. Andrade.

(b) **The history and characteristics of the defendant**

Ms. Andrade is under-educated and under-trained either for life in the United States or in El Salvador. She left school in El Salvador after 8th grade, at age 14, when she became pregnant, having previously been abandoned by her parents and sexually abused by multiple family members. When she was about 21 she came (illegally) to the United States, leaving her three (3) children with their father, in order to make a better life for herself. However, with her lack of education and skills she has been, primarily, a prostitute and house cleaner. She has no legitimate skills that would effectively allow her to support herself, much less her children, in El Salvador. Ms. Andrade is described in the report and this Court can see the results of a childhood interrupted. She was sexually abused by age 10, attempted suicide by age 12 and became a mother by age 14. By the time she was 21 she had three (3) children and came to the United States, where her aunt promptly (if informally) turned her into a prostitute by having Ms. Andrade provide sex for older men after drinking parties.

Ms. Andrade is not the victim in this case, EA is. However, just as EA was

victimized as a young girl by a culture encouraging minors to prostitute themselves, so to was Ms. Andrade victimized. The wheel has turned and the victimization has moved on another generation, but this Court must not lose sight of where Ms. Andrade came from, and how natural such prostitution appeared to her. She came to the United States from an MS-13 culture, to earn money to pay a family debt to a gang in El Salvador and to pay the smuggler who brought her into this country, without any qualifications other than her sex and her age to do so. When she arrived here, she gravitated toward that which she knew, the gangs and sex for money.

A sentence as proposed herein would be appropriate in this case, to wit: it would be "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. §3553(a).

### *(2) "the need for the sentence imposed:"*

    (a) **to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense**

        (i) *to reflect the seriousness of the offense*

The sentence to be imposed in this case must reflect the serious nature of the offense. Ms. Andrade plead guilty to a serious crime, but her participation in that crime was of a minimal nature, facilitating the actions and schemes of others. Similarly, the sentence proposed herein (120 months) also acknowledges the serious nature of that offense, while reflecting the minimal nature of Ms. Andrade's culpability. Imposing a sentence as described herein, based on the conviction event and Ms. Andrade's role in the offense and her characteristics as discussed herein, would adequately reflect the seriousness of the crime and Ms. Andrade's participation therein, but would not be

greater than necessary to achieve the ends of criminal sentencing.

(ii) *to promote respect for the law*

Presumably, this clause is intended to include the phrase "by the public." After all, in order for a society to live by "the rule of law," as we do in the United States, the public must be able to maintain respect for the law. This requires, *inter alia*, the public to believe that the law is applied even-handedly, and that there be a relationship between the conduct of a defendant to the harm, if any intended, the harm, if any actually caused by that conduct, and the punishment imposed, balanced by the "history and characteristics of the defendant." A 120 month sentence of imprisonment, as proposed herein, would, if known by the public, promote respect for the law, without over-incarcerating Ms. Andrade, based on her behavior and history.

(iii) *promote just punishment for the offense*

It is difficult to see much distinction between this part (iii) and part (ii), since a just punishment for the offense should, of necessity, "promote respect for the law." Again, one must weigh the criminal behavior in context, consider the harm intended, if any, the harm caused, if any, and the background of the defendant. Any sentence of incarceration, including a sentence of 120 months, to a member of the public, represents a considerable punishment, and when balanced in light of Ms. Andrade's minor participation in the subject criminal endeavor, appears sufficiently harsh as to be "just punishment."

(b) **to afford adequate deterrence to criminal conduct**

The language of this sub-section is not clear in delineating if the deterrence is meant to apply to the defendant, or to the general public, and both are certainly

appropriate interpretations. In Ms. Andrade's case, the proposed 120 month sentence, in conjunction with the stigma of being a convicted felon who will be deported after serving her prison sentence, is more than adequate to deter her from future criminal conduct. When she is released from imprisonment and deported, the message will be loud and clear, and such punishment cannot help but send an effective and adequate message to Ms. Andrade about her future behavior, as well as reminding her of her prior bad decisions.

As for the deterrent effect on the general public, there is no easy way to calculate the deterrent effect in any case, since we can not properly measure the public's awareness of the sentence imposed on a given defendant, or its awareness of the criminal behavior that brought that defendant to this point. Still, if the general public were to inquire, and were to learn what the Court knows about Ms. Andrade's background and involvement in this criminal behavior, it would be safe to say that no one would be eager to repeat what Ms. Andrade did if he or she knew that they would face ***any*** punishment from a federal court for doing so, much less a sentence of 120 months in prison and deportation.

### (c) **to protect the public from further crimes of the defendant**

This goal is very similar to that in the preceding sub-section. Certainly, if the punishment chosen by the Court is adequate to deter Ms. Andrade from (future) criminal conduct, as we have previously analyzed, then the sentence is "sufficient but not greater" than necessary to protect the public from future crimes of this defendant.

### (d) **to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

As previously noted, Ms. Andrade is under-educated and under-trained. She left

school after 8th grade, at age 14, when she became pregnant, having previously been sexually abused by multiple family members. She has been, primarily, a prostitute and house cleaner. She has no legitimate skills that would effectively allow her to support herself, much less her three (3) children, when she is returned to El Salvador where the children reside with their father. It is important that the BOP be aware that the rehabilitation of Ms. Andrade will require that she receive psychological/psychiatric and counseling treatment for issues arising from her childhood, as well as educational and training services to adequately prepare her for her return to society (in El Salvador). In order to allow Ms. Andrade to be something other than a prostitute in El Salvador she needs education and training to improve her skill set. Otherwise, we will just be spending an exorbitant amount of BOP money to warehouse Ms. Andrade for 10 (or more) years before sending her back to El Salvador and into society no better prepared to deal with life than she was before her involvement with this case, just ten years older and bitter about her punishment.

### *(3) "the kinds of sentences available"*

Based upon the guideline range proposed in the report, and the statutory mandatory minimum sentence proposed herein as a substitute for a guideline range sentence, a sentence of probation is not permitted in this matter, nor is Ms. Andrade eligible for a split sentence or for some form of alternative sentence, such as home detention or community confinement. The Court is required under the guidelines to impose a term of imprisonment. However, the guidelines are advisory, and this Court may impose a sentence of the statutory mandatory minimum, which is less than the low end of the guideline range.

### (4) *"the kinds of sentence and the sentencing range established for*

###     (a) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines

(1) issued by the Sentencing Commission . . ."

The sentencing range calculation in the report and the suggested variant sentencing structure for this case have already been discussed herein.

### (5) *"any pertinent policy statement"*

To our knowledge, sentencing in this case does not involve a policy statement. Therefore, there is no need to consider this factor.

### (6) *"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"*

Unwarranted sentence disparities must be addressed in this matter. §3553(a)(6). Such disparities arise when similar defendants, who engaged in similar behavior, are treated dissimilarly. The rational and consistent application of the voluntary sentencing guidelines, and the imposition of sentences fairly, demands that a defendant with a less significant criminal history be sentenced to a less significant term of imprisonment than a defendant with a more significant criminal history (assuming that the criminal behavior of the two (2) defendants was similar). In the same manner, if two (2) defendants have the same criminal history, then the defendant with greater criminal culpability or more significant behavior should be sentenced to a greater term of imprisonment.

As noted in the report, Ms. Andrade has one prior state conviction (for prostitution) for which she was required to pay a fine. The report proposes that she be considered in Criminal History I. Her criminal history and history of victimization indicates that in comparing her to other defendants Ms. Andrade must rank at or near the

bottom in terms of criminality. With respect to her criminal behavior in this case, as compared with similar cases, there no evidence that Ms. Andrade solicited EA to become a prostitute, or that she took any role more active than a prostitute who provided EA (who was then living with one of Ms. Andrade's pimps) with information about another pimp, and about how that pimp treated prostitutes who worked for him. If not for the fact that Ms. Andrade accompanied EA when she went with Mr. Ramos to engage in prostitution (purely as a companion) on more than one occasion, the Repeat Sex Offender increase would not have been assessed, and Ms. Andrade's guideline range would have been below the statutory mandatory minimum. Instead, the guideline range is much higher than it would have been, and much higher than it needs to be, compared to others in similar situations.

A sentence at the statutory mandatory minimum of 120 months would eliminate any disparity of sentencing between Ms. Andrade and others similarly situated who engaged in similar acts.

### *(7) the need for restitution*

The consideration of any restitution obligation is mandated in §3553(a)(7). A mandatory restitution obligation is referenced in the report in an undetermined amount (along with a forfeiture obligation), despite the fact that Ms. Andrade has no assets or resources to enable her to satisfy any such obligations.

### VII.  DESIGNATION

Ms. Andradre respectfully requests that this Court recommend that the BOP designate her to a facility as close as possible to this area, since her family and support

network reside in this district and will be a vital part of her rehabilitation while imprisoned.

## VIII. CONCLUSION

This Court, having accepted Ms. Andrade's guilty plea; having reviewed the presentence investigation report, this position with respect to sentencing, the government's position with respect to sentencing, the sentencing factors enumerated in 18 U.S.C. §3553(a) and the letters submitted on Ms. Andrade's behalf; and having heard the presentations of counsel and the defendant, should impose a sentence consistent with the calculations referenced herein and below the guideline range, of 120 months, for the reasons stated herein. In addition, because Ms. Andrade will be incarcerated for a significant period of time, has no employment and has no future prospects for appreciable employment, no fine or costs of imprisonment should be imposed against her as a result of this matter.

Respectfully submitted,

YANIRA del CARMEN GUERRERO-ANDRADE

/s/
By: WILLIAM B. CUMMINGS, ESQUIRE
VSB #6469
Attorney for YANIRA del CARMEN
    GUERRERO-ANDRADE
WILLIAM B. CUMMINGS, P.C.
Post Office Box 1177
Alexandria, VA 22313
(703) 836-7997
FAX (703) 836-0238
Email: wbcpclaw@aol.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY THAT on this 30th day of April, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing (NEF) to the following:

> Marc Birnbaum, Esquire
> Michael Frank, Esquire
> Assistant US Attorney
> 2100 Jamieson Ave.
> Alexandria, VA 22314

      AND I HEREBY CERTIFY THAT I am mailing the foregoing document and the NEF by U.S. mail to the following non-filing user:

> Quentin T. Lowe
> U.S. Probation Officer
> 401 Courthouse Square
> Alexandria, VA 22314

>       /s/
> WILLIAM B. CUMMINGS, ESQUIRE
> VSB #6469
> Attorney for YANIRA del CARMEN
>    GUERRERO-ANDRADE
> WILLIAM B. CUMMINGS, P.C.
> Post Office Box 1177
> Alexandria, VA 22313
> (703) 836-7997
> FAX (703) 836-0238
> Email: wbcpclaw@aol.com