IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 1:13-CR-69 |
| v. | ) | |
| | ) | The Honorable James C. Cacheris |
| YANIRA DEL CARMEN GUERRERO-ANDRADE, | ) | |
| | ) | Sentencing Date: May 10, 2013 |
| | ) | |
| Defendant. | ) | |

**POSITION OF THE UNITED STATES
WITH RESPECT TO SENTENCING**

The United States of America, by Neil H. MacBride, United States Attorney for the Eastern District of Virginia, Marc J. Birnbaum, Special Assistant United States Attorney, and Michael J. Frank, Assistant United States Attorney, in accord with 18 U.S.C. § 3553 and the United States Sentencing Commission, Guidelines Manual § 6A1.2, files this Position of the United States with Respect to Sentencing.

The United States has reviewed the Pre-sentence Report and concurs with the findings of the Probation Office, including the determination that the applicable guideline range is 151 to 188 months' imprisonment. The United States respectfully submits that a sentence of 151 months' imprisonment appropriately accounts for each of the factors set forth in 18 U.S.C. § 3553(a), and respectfully requests that the Court impose such a sentence.

**ARGUMENT**

**I.     Applicable Sentencing Law**

A sentencing court considers both the Sentencing Guidelines and other statutorily prescribed factors. *See* 18 U.S.C. § 3553(a); *United States v. Hughes*, 401 F.3d 540, 546 (4th

Cir. 2005). To determine a sentence, "[a] district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines." *Hughes*, 401 F.3d at 546. "Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *Id.* at 546. Those factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to promote respect for the law, provide just punishment, deter criminal conduct, protect the public, and avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a).

Although the Sentencing Guidelines are advisory and are only one of the factors listed in § 3553(a), the Guidelines assist the court by "'provid[ing] certainty and fairness in meeting the purposes of sentencing, [while] avoiding unwarranted sentencing disparities.'" *United States v. Booker*, 543 U.S. 200, 264 (2005) (quoting 28 U.S.C. § 991(b)(1)(B)); *see also* 18 U.S.C. § 3553(a)(6). Indeed, in the ordinary case, there will be a significant amount of overlap between the Guidelines range and the remaining § 3553(a) factors because the Guidelines "reflect a rough approximation that might achieve § 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007). The Guidelines, for example, encompass the most salient aspects of "the nature and circumstances of the offense" (by establishing an Offense Level that incorporates aggravating or mitigating circumstances such as loss amounts, number of victims, and a defendant's role in the offense), as well as reflecting "the history and characteristics of the defendant" (most notably by establishing a Criminal History Category based on the defendant's prior criminal record). 18 U.S.C. § 3553(a)(1). The Guidelines further help to prevent "unwarranted sentencing disparities" by ensuring that defendants who have committed similar crimes and have similar criminal records will receive roughly similar sentences, regardless of the district and courtroom

in which they are sentenced. 18 U.S.C. § 3553(a)(6); *see Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). Thus, although the Guidelines are not mandatory, they remain "the starting point and the initial benchmark" in ensuring fair and just sentencing both for defendants, individually, and across multiple cases, collectively. *Gall*, 552 U.S. at 49.

## II.    Sentencing Guidelines Calculation

The United States concurs in the Probation Office's Guidelines calculation. The base offense level for Sex Trafficking of a Juvenile is 30. U.S.S.G. § 2G1.3(a)(2). The offense level is increased by two levels because the offense involved the commission of a sex act or sexual contact, *id.* § 2G1.3(b)(4)(A), and by five additional levels because the defendant engaged in a pattern of activity involving prohibited sexual conduct, *id.* § 4B1.5(b)(1).[1] After a three-level reduction for acceptance of responsibility,[2] the defendant is subject to a total Offense Level of 34. The defendant's criminal history is Category I. Accordingly, the Guidelines range is 151 to 188 months' imprisonment.

---

[1] As noted in the presentence report, this enhancement applies to a pattern of criminal behavior (defined as prohibited sexual conduct on at least two occasions). U.S.S.G. § 4B1.5(b), cmt. 4(B)(i).

[2] The United States moves this Court pursuant to U.S.S.G. § 3E1.1 to grant a three-level reduction in the defendant's offense level for acceptance of responsibility. The defendant assisted authorities in the investigation and prosecution of her own misconduct by timely notifying the United States of her intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently.

## III. A Sentence of 151 Months' Imprisonment is Appropriate Based on the § 3553(a) Factors.

In assessing the appropriate sentence, the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court shall consider the need for the sentence imposed: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

### a. A Sentence of 151 Months' Imprisonment is Reasonable and Appropriate Given the Nature and Circumstances of the Offense and the Characteristics of the Defendant.

Particularly important in this sentencing calculus is the nature and circumstances, as well as the seriousness, of the underlying offense: the prostitution of E.A. on multiple occasions, starting when she was just 15-years-old.

As detailed in the Statement of Facts, from at least June 2008 through September 4, 2012, the defendant's boyfriend, Julio Cesar Revolorio-Ramos and the sex trafficking organization of which he was part, recruited, transported, and provided women and girls – most of whom were illegal aliens – for commercial sex acts in Virginia, Maryland, Delaware, and the District of Columbia.

The defendant met E.A. in 2009. At that time, E.A. was a 15-year-old runaway staying with a man in Maryland who demanded rent from her. E.A. was pregnant and was desperate for money to pay rent. The defendant and the man with whom E.A. lived spoke with E.A., and told her that prostitution was a great way to make money and that she could work as a prostitute for

Revolorio-Ramos. E.A. then spoke with Revolorio-Ramos by telephone and Revolorio-Ramos also encouraged E.A. to work for him as a prostitute. With no other options, E.A. agreed to do so, and the defendant introduced E.A. to Revolorio-Ramos. *See United States v. Irving*, 554 F.3d 64, 75 (2d Cir. 2009) ("children who were homeless and were without parental or other appropriate guidance made them unusually vulnerable, independently of their ages").

Revolorio-Ramos and the defendant first prostituted E.A. over a three-day period in January 2009. Revolorio-Ramos and the defendant drove E.A. from Maryland into Virginia to engage in commercial sex acts with numerous customers. As instructed by Revolorio-Ramos and the defendant, customers paid $30 for 15 minutes of sexual intercourse or oral sex. Revolorio-Ramos provided E.A. with condoms and lubricant, and drove her to various apartments, and the defendant accompanied E.A. to the apartments where the sex acts occurred. The defendant thereby ensured the success of the conspiracy on these occasions.

On the first day, E.A. had sex with approximately 17 customers. Although E.A. was sore and crying, Revolorio-Ramos instructed her to continue having sex with customers. Although the defendant was also present, she did not intervene or try to help E.A. Instead, the defendant assisted Revolorio-Ramos in exploiting E.A.[3] On the third day, E.A. endured sex with approximately 25 customers. Although E.A. told Revolorio-Ramos after her 16th customer that she wanted to stop, Revolorio-Ramos pushed her to have sex with more customers, and E.A. felt compelled to do so.

---

[3] The defendant asks this court to be merciful to her because she allegedly was sexually exploited in the same manner as E.A. Assuming for the moment that the defendant's claims of exploitation are true, this should have induced the defendant to help E.A. escape similar exploitation, or at least should have caused the defendant to refuse to exploit E.A. Despite knowing the pain that E.A. experienced, the defendant did not lift a finger to help E.A. Instead, the defendant helped Revolorio-Ramos exploit E.A. for profit.

Revolorio-Ramos later prostituted E.A. on two additional occasions in 2010, after E.A. had moved in with Revolorio-Ramos and the defendant. The defendant watched over E.A.'s baby while Revolorio-Ramos prostituted E.A., and E.A. paid a portion of the money she earned from prostitution towards the rent for living at Revolorio-Ramos's and the defendant's residence. The defendant also provided E.A. with contact information for other prostitution organizations so that E.A. could be prostituted by those enterprises, and pay rent, when she was not being prostituted by Revolorio-Ramos.

The impact of this sex trafficking conspiracy on E.A. will be profound and long-lasting. Revolorio-Ramos and the defendant arranged for E.A. to have sex with multiple men, day after day, without regard to E.A.'s physical and mental health. The defendant's sentence should reflect the impact of her crime on E.A. The law properly recognizes that children are more vulnerable than adults. Children, including those who are 15-years-old, are more easily manipulated and coerced based on their limited life experiences and still-developing judgment. In short, the defendant's conduct struck directly at E.A.'s personal safety, physical and mental health, and her very dignity. It is serious conduct that warrants a severe punishment.

> **b. A Sentence of 151 Months' Imprisonment Will Protect the Public, Provide Appropriate and Reasonable Deterrence, Promote Respect for the Law, and Avoid Unwarranted Sentence Disparities.**

A sentence of 151 months' imprisonment will promote respect for the law, deter the defendant and others from similar acts, and avoid unwarranted sentencing disparities.

Judges in this District have consistently imposed significant sentences for sex trafficking convictions under 18 U.S.C. § 1591. In *United States v. Jose Ciro Juarez-Santamaria* (1:11-CR-217), the defendant was sentenced to <u>life imprisonment</u> (a Guideline sentence) for prostituting a girl and allowing his fellow MS-13 members to have sex with her for free. In *United States v.*

6

*Rances Amaya* (1:11-CR-556), the defendant was sentenced to 600 months in prison (within the Guidelines range of 360 months to life imprisonment) for assisting another MS-13 member in running a juvenile prostitution business. In *United States v. Justin Strom* (1:12-CR-159), the defendant was sentenced to 480 months in prison (below the Guidelines range of life imprisonment) for recruiting at least eight juvenile prostitutes and managing all aspects of the prostitution ring.[4] In *United States v. Alonso Bruno Cornejo Ormeno* (1:11-CR-260), the defendant was sentenced to 292 months in prison (the low-end of the Guidelines range) for recruiting four juvenile prostitutes and managing all aspects of the prostitution ring. In *United States v. Ramiro Espinoza Jamaica* (1:12-CR-91), the defendant was sentenced to 168 months in prison (within the Guidelines range) for trafficking a 14-year-old girl on a single occasion. In *United States v. Alexander Rivas* (1:11-CR-166), the defendant was sentenced to 120 months of imprisonment (below the low-end of the Guidelines range of 168 months) for recruiting two juvenile runaways to work as prostitutes.

The defendant's co-conspirator, Revolorio-Ramos (1:12-CR-474-CMH), received a sentence of 188 months' incarceration for his conviction for Sex Trafficking of a Juvenile.

Finally, this case, along with the recent increase in gang-related juvenile sex trafficking prosecutions in this District, underscores the need for deterrence, both general and specific, of such conduct. Gang members and associates—as well as independent pimps who have no direct connection to gangs or organized crime—have turned to sex trafficking because it is seen as a lucrative means to make a quick profit. Such criminal enterprises have low start-up costs, a

---

[4] Four co-defendants who conspired with Strom, but had lesser roles in the enterprise, received lower sentences. *See United States v. Michael Jefferies*, 1:12-CR-143 (120 months); *United States v. Donyel Dove*, 1:12-CR-184 (276 months, including convictions for unrelated offenses); *United States v. Christopher Sylvia*, 1:12-CR-128 (120 months); and *United States v. Henock Ghile*, 1:12-CR-182 (120 months).

7

ready supply of victims, and significant demand in a marketplace that often operates both online and on the street. Traffickers must not be allowed to conclude that juvenile prostitution is a viable business enterprise, or that they will be punished lightly if caught. And the victims of such conduct—past, present, and future—should also be given tangible proof that once sex traffickers are apprehended, justice will be served.

## CONCLUSION

A sentence of 151 months' imprisonment is necessary and sufficient to account for the sentencing factors listed in 18 U.S.C. § 3553(a).

                                        Respectfully submitted,

                                        Neil H. MacBride
                                        United States Attorney

By:               /s/
         Marc J. Birnbaum
         Special Assistant United States Attorney (LT)
         Michael J. Frank
         Assistant United States Attorney
         Counsel for the United States
         United States Attorney's Office
         2100 Jamieson Avenue
         Alexandria, Virginia 22314
         (703) 299-3700 (phone)
         (703) 299-3982 (fax)
         marc.birnbaum@usdoj.gov
         michael.frank@usdoj.gov

Dated: May 3, 2013

**CERTIFICATE OF SERVICE**

      I certify that on May 3, 2013, I electronically filed the foregoing memorandum with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following: William Cummings, Esq., counsel for the defendant.

      By:         /s/
      Marc J. Birnbaum
      Special Assistant United States Attorney (LT)
      Counsel for the United States
      United States Attorney's Office
      2100 Jamieson Avenue
      Alexandria, VA 22314
      703-299-3700 (phone)
      703-299-3982 (fax)
      marc.birnbaum@usdoj.gov